EDWARD H. KUBO, JR. # 2499
United States Attorney
District of Hawaii

**ORIGINAL**

RONALD G. JOHNSON # 4532
Major Crimes Section Chief

MARSHALL H. SILVERBERG # 5111
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: marshall.silverberg@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 24 2008

at _____ o'clock and ____ min. ____ M.
SUE BEITIA, CLERK

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CR 08-00577 DAE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. |
| Plaintiff, | INDICTMENT |
| vs. | Counts 1 & 4: 42 U.S.C. § 6928(d)(2)(A) & 18 U.S.C. § 2 |
| JEROME "Jerry" ANCHES,  (01)  STEPHEN SWIFT,  (02) | Counts 2 & 3: 42 U.S.C. § 6928(d)(5) & 18 U.S.C. § 2 |
| Defendants. | Count 5: 18 U.S.C. § 1341 |

**INDICTMENT**

<u>COUNT 1</u>
(42 U.S.C. § 6928(d)(2)(A))
and 18 U.S.C. § 2)
(storing hazardous waste without a permit
and aiding and abetting the same)

The Grand Jury charges that:

1.   <u>Introduction</u>

(a).  The Resource Conservation and Recovery Act
(RCRA), 42 U.S.C. § 6901 *et. seq.*, was enacted as a Congressional
response to the growing number of hazardous waste sites resulting
from unregulated waste disposal practices.  RCRA established a
"cradle-to-grave" regulatory scheme to govern and track hazardous
waste from the point of its "generation" until its final
disposal.  RCRA requires the Administrator of the Environmental
Protection Agency to promulgate regulations pertaining to the
generation, storage, transportation, and disposal of hazardous
waste, and these regulations are codified at 40 C.F.R. Subchapter
I.  RCRA also authorizes state governments to develop hazardous
waste programs and, if authorized by the EPA, to administer and
enforce their hazardous waste programs.  42 U.S.C. § 6926.
Criminal violations of a state's hazardous waste program may be
prosecuted in federal court under 42 U.S.C. § 6928(d) and 18
U.S.C. § 3231.

(b).  Hawaii received authorization, effective
November 13, 2001, to operate a hazardous waste management
program.  Consequently, persons in Hawaii must comply with the
authorized state requirements in lieu of the previously
applicable federal requirements.  Hawaii's Hazardous Waste

2

Management Program is set forth in Haw. Rev. Stat. Chapter 342J and its regulations are codified at Title 11 of the Hawaii Administrative Rules (HAR), Section 260 *et. seq.*

       (c). In order for a waste in Hawaii to be subject to regulation as a "hazardous waste," it must be a "solid waste," namely any "discarded material" (except for a narrow exception). 11 HAR § 261-2(a)(1). A "discarded material" is any material which is "abandoned" (or other definitions which do not apply here). 11 HAR 261-2(a)(2)(i). Materials are solid waste if they are "abandoned" by being disposed of, burned or incinerated, or accumulated or stored before or in lieu of being abandoned by being disposed of, burned, or incinerated. 11 HAR 261-2(b).

       (d). A "solid waste" may be a "hazardous waste" if it exhibits one of the four characteristics enumerated in the regulations, 11 HAR §§ 261-21 through 261-24, namely, ignitability, corrosivity, reactivity, or toxicity (these wastes are commonly referred to as "characteristic hazardous wastes") or if it is listed in one of the tables at 11 HAR §§ 261-31 through 261-33 (these wastes are commonly referred to as "listed hazardous wastes").

       (e). Under the State of Hawaii's Hazardous Waste Program, the chemical called tetrachloroethylene (also commonly referred to as perchloroethylene or "perc") is a characteristic hazardous waste if, using the Toxicity Characteristic Leaching Procedure (TCLP), a representative sample of the waste contains a

3

concentration of tetrachloroethylene of .7 milligrams per liter
or more (with a hazardous waste number D039), 11 HAR § 261-24.

(f).   A solid waste containing tetrachloroethylene
is a listed hazardous waste if the tetrachloroethylene came from
a commercial chemical product, manufacturing chemical
intermediate, or off-specification commercial chemical product.
Solid wastes containing tetrachloroethylene from these sources,
including any residue or contaminated soil, water, or other
debris resulting from the cleanup of a spill into or on any land
or water, are RCRA listed hazardous wastes (with a hazardous
waste number U210).   11 HAR § 261-33.

(g).   A "generator" of hazardous waste means any
person, by site, whose act or process produces hazardous waste
identified or listed in 11 HAR § 261 whose act first causes a
hazardous waste to become subject to regulation under Hawaii's
hazardous waste program.   11 HAR § 260-10.   "Person" includes any
"individual . . ., [or] public or private corporation. . . ."   11
HAR § 260-10.

(h).   A generator of hazardous waste may not store
hazardous waste on site for more than ninety (90) days without a
permit.   11 HAR § 262-34.   If the generator of the hazardous
waste does not have a permit, he must, within ninety days of when
the hazardous waste was generated, arrange for the hazardous
waste to be transported and disposed of in accordance with the
requirements of 11 HAR § 262-34.   The term "transporter" means a

4

person engaged in the off-site transportation of hazardous waste by air, rail, highway, water, or pipeline.  11 HAR § 260-10.

(i).  A generator who transports, or offers for transportation, hazardous waste for offsite treatment, storage, or disposal must prepare a manifest in accordance with 11 HAR § 262 Subchapter B.  11 HAR § 262-20(a).  A generator must designate on the manifest at least one facility which is permitted to handle the waste described on the manifest.  11 HAR § 262-20(b).  If the transporter is unable to deliver the hazardous waste to the designated facility or an alternate facility, the generator must either designate another facility or instruct the transporter to return the waste.  11 HAR § 262-20(d).

(j).  The generator must sign the manifest certification by hand; obtain the handwritten signature of the initial transporter and date of acceptance on the manifest; and retain one copy, in accordance with 11 HAR § 262-40(a).  11 HAR § 262-23(a).  The generator must give the transporter the remaining copies of the manifest.  11 HAR § 262-40(a).

(k).  Before transporting hazardous waste or offering hazardous waste for transportation off-site, a generator must package and label the waste in accordance with the applicable United States Department of Transportation regulations on packaging and labeling under 49 C.F.R. Parts 172, 173, 178, and 179.  11 HAR §§ 262-30, 262-31, 262-32, 262-33, and 262-34.

(1). When a generator or transporter is a corporation, the "responsible corporate officer" doctrine imposes individual liability upon those with the responsibility or authority to prevent or correct the violation.

2. At all times material to this Indictment:

(a). Defendant JEROME "Jerry" ANCHES was the President of Martin Warehousing and Distribution ("MWD"). MWD, with a facility located at 1122 Mikole Street, Honolulu, Hawaii, was in the business of transporting and distributing freight, including some of which arrived in shipping containers via Matson Shipping Company.

(b). On or about August 14, 2001, at the MWD location at 1122 Mikole Street, Honolulu, Hawaii, in the District of Hawaii, there was a hazardous waste spill involving the puncture of a 55-gallon drum of tetrachloroethylene ("perc") by an MWD forklift driver. The source of the 55-gallon drum was a company called Vopak USA, Inc., and it was to be used as a commercial chemical product.

(c). MWD contacted the Honolulu Fire Department, which arrived and contained the spill. MWD also contacted Pacific Environmental Company ("PENCO"), which specialized in the clean-up of hazardous wastes sites and the disposal of hazardous waste. Shortly thereafter, still on August 14, 2001, PENCO employees arrived in order to clean-up the site.

(d). PENCO removed water, dirt, absorbent, and mud on the ground and put them in multiple 55-gallon drums.

6

PENCO also removed asphalt and dirt and put them in tri-wall boxes manufactured for the purpose of containing such items. PENCO tested samples from the water, dirt, absorbent, and mud contained in the 55-gallon drums and the asphalt and dirt in the tri-wall boxes and sent them to a laboratory to be tested.  The laboratory later determined that some of the 55-gallon drums contained hazardous waste under the law because of the amount of tetrachloroethylene contained therein.

(e).  The 55-gallon drums containing contaminated water and the tri-wall boxes were placed in a red Matson container on MWD's property at 1122 Mikole Street, Honolulu, Hawaii.

(f).  PENCO then prepared manifests and hazardous waste labels to ship the hazardous waste contained in the 55-gallon drums and tri-wall boxes to the mainland for disposal in a proper facility.  PENCO assisted ANCHES in obtaining an EPA installation identification number by submitting a form called, "Notification of Regulated Waste Activity" to the EPA.  The form identified that: an installation where hazardous waste was generated was called "Martin Warehousing and Distr;" it was located at 1122 Mikole Street, Honolulu, Hawaii; the installation contact was "Jerry Anches" as the President of Martin Warehousing; there was more than 1000kg of hazardous waste generated; and the EPA Hazardous Waste Numbers for tetrachloroethylene (D039 and U210) were listed.  PENCO informed

MWD that the EPA installation identification number was good only for ninety (90) days.

(g). A PENCO employee also told ANCHES that PENCO was willing to transport the hazardous waste contained in the drums and tri-wall boxes to the mainland United States for disposal for a fee of $16,534. Because of the cost, ANCHES decided not to hire PENCO to transport the hazardous waste to the mainland for disposal. ANCHES did not, however, obtain a permit from the EPA allowing him to store the hazardous waste on MWD's property; yet, the hazardous waste remained in the red Matson container on MWD's property at 1122 Mikole Street, Honolulu, Hawaii, until it was removed on about February 7 or 8, 2005.

(h). In May 2008, the EPA shipped the hazardous waste contained in the 55-gallon drums and tri-wall boxes to the mainland for sampling, testing, and disposal. Representative samples were taken of eleven of the 55-gallon drums and they were tested under the standard "TCLP" protocol for the presence or absence of tetrachloroethylene. Four of the eleven 55-gallon drums contained tetrachloroethylene in amounts greater than .7 milligrams per liter, making the contents therein "hazardous waste" under 11 HAR 261-24. Also, as noted above, tetrachloroethylene is a listed hazardous waste under 11 HAR § 261-33 where, as here, the source of the tetrachloroethylene is known to be a commercial product.

3. From beginning on or about ninety-one (91) days after August 14, 2001, that is, on or about November 13, 2001,

8

and continuing thereafter until February 7 or 8, 2005, in the District of Hawaii, the defendant JEROME "Jerry" ANCHES, as the President and responsible corporate officer of Martin Warehousing and Distribution, did knowingly store hazardous waste and aid and abet the storage of hazardous waste, that is, tetrachloroethylene, at 1122 Mikole Street, Honolulu, Hawaii, without a permit as required by the Resource Conservation and Recovery Act, Title 42, United States Code, Sections 6901 *et. seq.* and Title 11, Hawaii Administrative Rules, Sections 260 *et. seq.*

All in violation of Title 42, United States Code, Section 6928(d)(2)(A) and Title 18, United States Code, Section 2.

### COUNT 2
(42 U.S.C. § 6928(d)(5) and
18 U.S.C. § 2))
(causing the transportation of
hazardous waste without a manifest and
aiding and abetting the same)

The Grand Jury further charges that:

1. Paragraphs 1 and 2 of Count 1 of this Indictment are incorporated herein by reference.

2. At all times material to this Indictment:

(a). Defendant STEPHEN SWIFT (hereinafter SWIFT) was a paid consultant to a Hawaii company called "RRL, Inc." Although carried on the corporate books as a "consultant," SWIFT was in *de facto* control over RRL, Inc., and served as its *de facto* "responsible corporate officer." RRL, Inc., had its

corporate offices located at 2265 Hoonee Place, Suite 250, Honolulu, Hawaii.

(b).  On or about October 27, 2004, MWD's parent company, Shelby Hawaii, Inc., per its president, defendant JEROME ANCHES, agreed to sell the real property located at 1122 Mikole Street, Honolulu, Hawaii.  The property, however, had to be cleared, including the removal of the red Matson container and the hazardous waste contained therein.

(c).  On or about February 7, 2005, ANCHES, as President and Chief Executive Officer of MWD, contracted with RRL, Inc., via its *de facto* responsible corporate officer, SWIFT, to remove, test, and dispose of the hazardous waste located in the red Matson container on 1122 Mikole Street, that is, tetrachloroethylene, as described above in paragraph 2 of Count 1 of this Indictment.  The hazardous waste in the red container was supposed to be moved from MWD's property at 1122 Mikole Street, Honolulu, Hawaii, to property owned or controlled by SWIFT at 85-1535 Haleahi Road, Waianae, Hawaii.  The contract price was to be determined by the results of the testing and the cost in the disposal of the hazardous waste.  The initial payment upon signing the contract was supposed to be $15,000.

(d).  No one, not SWIFT or ANCHES, nor anyone else at MWD or RRL, Inc., prepared or obtained a manifest to transport the hazardous waste as required by RCRA, 42 U.S.C. § 6901, *et. seq.*, as well as 11 HAR § 260 *et. seq.*, as described above in paragraph 1 of Count 1 of this Indictment.

(e).  On or about February 7 or 8, 2005, SWIFT, or someone on SWIFT's behest, moved the red Matson container on MWD's property located at 1122 Mikole Street, Honolulu, Hawaii, and the hazardous waste contained therein, to the public street near the corporate offices of RRL, Inc., located at 2265 Hoonee Place.  The container was left on the public street near RRL's offices, despite the fact that no one had prepared or obtained a manifest as required by RCRA and 11 HAR § 260 et. seq.  On or about March 8, 2005, MWD's parent company, Shelby Hawaii, LLC, paid RRL $7,812.45 as a partial payment for transporting the hazardous waste off of MWD's property.

3.  On or about February 7 or 8, 2005, with the exact date unknown to the Grand Jury, in the District of Hawaii, defendant JEROME "Jerry" ANCHES, as the President and responsible corporate officer of Martin Warehousing and Distribution, Inc., and Shelby Hawaii, Inc., and STEPHEN SWIFT, as the de facto responsible corporate officer of RRL, Inc., did knowingly cause to be transported and did aid and abet the transportation of hazardous waste, that is, tetrachloroethylene, from 1122 Mikole Street, Honolulu, Hawaii, to a public street near the corporate offices of RRL, Inc., that is, 2265 Hoonee Place, Suite 250, Honolulu, Hawaii, without a manifest as required by RCRA, Title 42, United States Code, Sections 6901 et. seq., and Title 11, Hawaii Administrative Rules, Sections 260 et. seq.

All in violation of Title 42, United States Code, Section 6928(d)(5) and Title 18, United States Code, Section 2.

11

## COUNT 3
(42 U.S.C. § 6928(d)(5))
(causing the transportation of
hazardous waste without a manifest)

The Grand Jury further charges that:

1.   Paragraphs 1 and 2 of Count 1 and Paragraph 2 of Count 2 of this Indictment are incorporated herein by reference.

2.   At some point between February 7, 2005, and February 16, 2005, the red Matson container, with the hazardous waste (that is, tetrachloroethylene) contained therein was moved from the public street near RRL's offices, 2265 Hoonee Place, Honolulu, Hawaii, to 85-1535 Haleahi Road, Waianae, Hawaii, which was property controlled by defendant STEPHEN SWIFT.  No manifest was obtained authorizing such transportation of hazardous waste.

3.   Between February 7 or 8, 2005, and February 16, 2005, with the exact date unknown to the Grand Jury, in the District of Hawaii, defendant STEPHEN SWIFT, as the *de facto* responsible corporate officer of RRL, Inc., did knowingly cause to be transported hazardous waste, that is, tetrachloroethylene, from 2265 Hoonee Place, Honolulu, Hawaii, to 85-1535 Haleahi Road, Waianae, Hawaii, without a manifest as required by RCRA, Title 42, United States Code, Section 6901 *et. seq.*, and Title 11, Hawaii Administrative Rules, Section 262.

All in violation of Title 42, United States Code, Section 6928(d)(5).

\ \

\ \

\ \

12

<u>COUNT 4</u>
(42 U.S.C. § 6928(d)(2)(A)
and 18 U.S.C. § 2)
(storing hazardous waste without a permit
and aiding and abetting the same)

1.   Paragraphs 1 and 2 of Count 1 and Paragraph 2 of
Count 2 and Paragraph 2 of Count 3 of this Indictment are
incorporated herein by reference.

2.   Under Hawaii's Hazardous Waste Program, anyone who
stores hazardous waste needs a permit.  11 HAR §§ 264-265.  It is
unlawful to store hazardous waste without a permit.  42 U.S.C. §
6928(d)(2)(A).

3.   From beginning on a date unknown to the Grand Jury,
but no later than February 16, 2005, and continuing thereafter
until on or about May 16, 2008, in the District of Hawaii, the
defendant STEPHEN SWIFT did knowingly store and aid and abet the
storage of hazardous waste, that is, tetrachloroethylene, at 85-
1535 Haleahi Road, Waianae, Hawaii, without a permit as required
by the Resource Conservation and Recovery Act, Title 42, United
States Code, Sections 6901 *et. seq.* and Title 11, Hawaii
Administrative Rules, Sections 260 *et. seq.*

All in violation of Title 42, United States Code,
Section 6928(d)(2)(A) and Title 18, United States Code, Section
2.

13

## COUNT 5
(18 U.S.C. § 1341)
(mail fraud)

The Grand Jury further charges that:

1.   Paragraphs 1 and 2 of Count 1, Paragraph 2 of Count 2, Paragraph 2 of Count 3, and Paragraph 2 of Count 4 of this Indictment are incorporated herein by reference.

2.   In a letter dated January 4, 2008, the State of Hawaii, Department of Health, wrote to the defendant STEPHEN SWIFT'S attorney and asked a number of questions, including whether SWIFT had dumped the red Matson container (and other containers) with the hazardous waste contained therein at 85-1535 Haleahi Road, Waianae, Hawaii.  The letter was sent to determine whether SWIFT and/or the owners of the real property located at 85-1535 Haleahi Road were in compliance with the State of Hawaii Hazardous Waste Program.

3.   By letter dated January 21, 2008, and postmarked on January 23, 2008, SWIFT responded to the letter from the State of Hawaii, Department of Health.  In that letter, SWIFT made a number of materially false statements, including the fact that the containers located on the Haleahi property did not contain waste but rather "damaged freight."

### THE SCHEME TO DEFRAUD THE STATE OF HAWAII BY MEANS OF FALSE REPRESENTATIONS

4.   On or about January 21, 2008, and continuing thereafter until approximately January 23, 2008, in the District of Hawaii, Defendant STEPHEN SWIFT knowingly devised and intended to devise a scheme to defraud the State of Hawaii by means of

14

materially false representations, well knowing at the time that such representations were false when made.

### THE PURPOSE OF THE SCHEME

5.   The purpose of the scheme was to falsely persuade the State of Hawaii that there was no hazardous waste in the red Matson container so that SWIFT would not face civil or criminal penalties for causing hazardous waste to be transported to 85-1535 Haleahi Road without a manifest and for storing hazardous waste on that property without a permit.

### THE MANNER AND METHOD OF EXECUTING THE SCHEME

6.   It was a part of the scheme to defraud the State of Hawaii, Department of Health, by false representations by informing that government entity that the items in the containers on the property located at 85-1535 Haleahi Road were not hazardous waste but rather were damaged freight, when in truth and in fact, as defendant STEPHEN SWIFT well knew, there was hazardous waste inside the red Matson container.

### THE USE OF THE MAILS IN FURTHERANCE OF THE SCHEME TO DEFRAUD THE STATE OF HAWAII, DEPARTMENT OF HEALTH, BY MEANS OF FALSE REPRESENTATIONS

7.  On or about January 23, 2008, in the District of Hawaii, and in order to execute and attempt to execute the scheme to defraud the State of Hawaii, Department of Health by means of materially false representations, defendant STEPHEN SWIFT knowingly caused to be delivered by the United States Postal Service a letter dated January 21, 2008, which contained a materially false statement, that is, that the containers located

15

at 85-1535 Haleahi Road contained no waste, only damaged freight,

when in truth and in fact, as defendant STEPHEN SWIFT well knew,

the red Matson container had hazardous waste contained in it.

All in violation of Title 18, United States Code,

Section 1341.

DATED: September 24, 2008, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson

FOREPERSON, GRAND JURY

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

RONALD G. JOHNSON
Assistant U.S. Attorney

MARSHALL H. SILVERBERG
Assistant U.S. Attorney

UNITED STATES v. JEROME "Jerry" ANCHES and STEPHEN SWIFT
Cr. No. _____ (Indictment)

16